UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-1306 JGB (SPx)** | Date | August 18, 2021 |
|---|---|---|---|
| Title | *Blanca Gomez v. County of San Bernardino, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order DENYING Plaintiff's Ex Parte Application for a Temporary Restraining Order (Dkt. No. 8) (IN CHAMBERS)**

Before the Court is an Ex Parte Application for a Temporary Restraining Order filed by Plaintiff Blanca Gomez.  ("Application," Dkt. No. 8.)  The Court finds the Application appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Application, the Court DENIES the Application.

## I.    BACKGROUND

On August 4, 2021, Plaintiff Blanca Gomez filed a complaint against Defendants County of San Bernardino ("County"), Tyler McGee, Jon Cahow, V. Quiroz, T. Gagne, and John Wickum (collectively, "Individual Defendants"), and Does 1-10.  ("Complaint," Dkt. No. 1.) The Complaint asserts two causes of action: (1) violation of 42 U.S.C. § 1983 based on deprivation of First, Fourth, and Fourteenth Amendment rights against Individual Defendants; (2) municipal liability under 42 U.S.C. § 1983 against County.  (Id.)

Plaintiff filed the Application on August 5, 2021.  (See Appl.)  Defendants opposed the Application on August 9, 2021.  ("Opposition," Dkt. No. 12.)

## II.    FACTS

Plaintiff is a Victorville City Council member.  (Gomez Decl. ¶ 2.)  On July 20, 2021, Defendants San Bernardino County Sheriff's Deputy T. Gagne and Captain John Wickum

arrested Plaintiff during a city council meeting after she asked them to stop harassing Robert Rodriguez, who was filming the council meeting.  (Id. ¶ 3.)

Plaintiff was livestreaming the Deputies' actions from her phone on her Instagram account.  (Id. ¶ 4.)  Plaintiff believes the Deputies deleted the videos from her phone and from her Instagram account after her arrest.  (Id. ¶ 5.)

Defendant Tyler McGee, a San Bernardino County Sheriff's detective, obtained a search warrant from San Bernardino County Superior Court Judge Kyle Brodie to search Plaintiff's home, as well as the home of Mr. Rodriguez.  (Id. ¶ 6.)  The search warrant encompassed "all rooms, closets, attics, garages, storage areas, patios, vehicles, RV in the back yard, including any safes, vaults, miscellaneous locked containers as well as all person's [sic] present."  (Id.; Ex. 1.)  The warrant listed the following property: "Cell phones possessed by Gomez and Rodriguez." (Id. ¶ 7.)  The warrant further states, "Although the crimes being investigated appear to be misdemeanors, a misdemeanor is a 'public offense' under Penal Code section 16.  It appears from the facts stated that the cell phones were used to commit at least one misdemeanor, and the warrant is therefore issued pursuant to Penal Code section 1524, subdivision (a)(3)."  (Id. ¶ 8.)

Plaintiff argues that this warrant was obtained on false pretenses, as it is legal to record city council meetings, and she did not commit any crimes.  (Id. ¶ 9.)

Defendants McGee, Quiroz, Cahow, and other San Bernardino County Sheriff's deputies went to Plaintiff's home, which she shares with roommates.  (Id. ¶ 10.)  Only the property owner and his brother (both of whom only speak Spanish) were initially present.  (Id.)  Plaintiff asserts, on information or belief, that Defendants held these two individuals at gunpoint while they searched all rooms in the house and seized property belonging to everyone living there.  (Id.)

Defendants seized the following items: Nokia Cell Phone; Apple Watch; Samsung Galaxy; Samsung; Black/red USB drive; iPad; iPad; CDL [California Driver's License]; Silver Apple Laptop; iPhone S; iPhone; iPhone S; iPhone; iPhone; iPhone; iPhone S; Acer Chromebook; Macbook Air; Lenovo laptop; White iPhone; Wallet with Robert Rodriguez's CDL; Black iPhone; iPad; Sky devices; Microsoft laptop.  (Id. ¶ 11.)

Among these items, Defendants seized Plaintiff's driver's license, depriving her of the ability to drive to work.  (Id. ¶ 13.)  Defendants also seized Plaintiff's computers, which contain materials she needs to participate in an online doctoral program at California Baptist University in Riverside.  (Id.)

In addition, Defendants seized Rodriguez's driver's license and SNAP eligibility card from Plaintiff, who was holding onto these items for Rodriguez.  (Id.)  Defendants also searched the home of Rodriguez and seized items.  (Id. ¶ 12.)  Rodriguez is still being held in county jail on a "flash incarceration" under Penal Code § 3455 without bail.  (Id.)

---

Plaintiff asserts that if her property is not returned to her immediately, she will be unable to complete her doctoral program or to work. (Id. ¶ 14.) Plaintiff's computer and devices contain materials she needs to write her dissertation, to communicate, to engage in collaborative work with colleagues, and to graduate. (Id. ¶¶ 15-19.) This includes years' worth of research, past assignments, and relevant applications and tools. (Id.) Plaintiff also uses her devices to help and encourage civic engagement, including to write letters on behalf of her constituents, to prepare for votes and meetings, and to research, aid, and inquire about her constituents. (Id. ¶ 20.) In addition, Plaintiff claims that these devices have applications she uses to make a living in the gig economy. (Id. ¶ 21.)

Defendants' actions have also damaged Plaintiff's living situation, as they brought City of Victorville Code Enforcement and Building Enforcement agents along while executing the search warrants. (Id. ¶ 22.) During the July 20, 2021 search, code and building enforcement agents roamed around the property without the owners' permission, took pictures of every room, and verbally informed the property owner of several alleged violations. (Id.) Plaintiff witnessed one of the agents speaking to the owner in Spanish, alluding to multiple violations, and stating that this treatment was due to a "criminal" living on the property. (Id.) Plaintiff's living situation is now precarious, as she feels unwelcome at her home. (Id. ¶ 23.)

### III.  LEGAL STANDARD

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. Reno Air Racing Assoc., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); see Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2011).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The Ninth Circuit employs the "serious questions" test, which states "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). "A preliminary injunction is an extraordinary and drastic remedy. It should never be awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citation omitted).

When seeking a temporary restraining order through an ex parte application, a plaintiff must further show that he is without fault in creating the crisis necessitating the bypass of regular motion procedures. See Mission Power Eng'g Co. v. Cont'l Gas Co., 883 F. Supp. 488, 492–93 (C.D. Cal. 1995). The propriety of a temporary restraining order, in particular, hinges on a

significant threat of irreparable injury, Simula, Inc. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999), that must be imminent in nature, Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).  The Ninth Circuit has cautioned that there are very few circumstances justifying the issuance of an ex parte temporary restraining order.  Reno Air Racing Assoc., Inc., 452 F.3d at 1131.

## IV.   DISCUSSION

Plaintiff seeks a temporary restraining order requiring Defendants to return all items they seized from Plaintiff's home on July 20, 2021 that are not "Cell Phones possessed by Gomez and Rodriguez."  (Appl. at 8.)  Defendants argue that Plaintiff's Application should be rejected because (1) Plaintiff fails to justify her request for emergency relief; (2) the Court lacks jurisdiction under the Rooker-Feldman doctrine; and (3) Plaintiff fails to establish the essential elements to obtain a TRO.  (See Opp'n.)  The Court agrees, and DENIES Plaintiff's Application for the first two independent reasons.

### A.  Ex Parte Application

Plaintiff fails to show her case will be irreparably damaged if the underlying application for a temporary restraining order is heard according to regular motion.  See Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995).  Plaintiff states that she needs her electronic devices for work or school.  (Gomez Decl. ¶¶ 14-21.)  Plaintiff does not explain why she cannot seek the remedy she seeks here in state court.  This is insufficient to establish irreparable harm or to justify "why [Plaintiff] should be allowed to go to the head of the line in front of all other litigants and receive special treatment."  Mission Power Eng'g Co., 883 F. Supp. at 492.  Plaintiff therefore fails to show ex parte relief is warranted.  However, even if Plaintiff had justified her request for ex parte relief or filed her request under regular motion procedures, the Application still fails.

### B.  Subject Matter Jurisdiction

Defendants argue that the Court does not have subject matter jurisdiction to grant Plaintiff's requested relief, as it would require the Court to invade the purview of the state courts to determine whether the officers' seizure exceeded the scope of the warrant.  (Opp'n at 7.)  The Court agrees.

The Rooker-Feldman doctrine prevents a federal district court from exercising jurisdiction over a direct appeal or a "de facto appeal" from a state court decision.  Cooper v. Ramos, 704 F.3 772, 777 (9th Cir. 2012) (citing Noel v. Hall, 341 F.3d 1148 (9th Cir. 2003)).  The doctrine applies "not only to final judgments, but also to 'interlocutory state court decisions.'"  Santos v. Superior Court of Guam, 711 F. App'x 419, 420 (9th Cir. 2018) (quoting Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001)).

//

### 1. De Facto Appeal

The Court first considers whether Plaintiff's Application constitutes a de facto appeal of a state court decision.[1] Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013). San Bernardino County Superior Court Judge Kyle Brodie issued a search warrant authorizing the search and seizure of "Cell Phones possessed by Gomez and Rodriguez." (Gomez Decl. ¶ 6; McGee Decl. ¶ 7.) After Individual Defendants executed the search warrant and seized several devices, they obtained a second warrant to obtain information from the cell phones and devices. (McGee Decl. ¶ 9.)

De facto appeals are those where a party is (1) asserting as his legal injury legal error by the state court and (2) seeks as his remedy relief from the state court decision. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004); see also Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007). "To determine whether an action functions as a de facto appeal, [courts] pay close attention to the relief sought by the federal-court plaintiff." Santos, 711 F. App'x at 420 (quoting Cooper, 704 F.3d at 777-78).

First, Plaintiff alleges as her legal injury that Individual Defendants obtained a search warrant under false pretenses, and then "exceed[ed] the scope of that warrant by seizing vastly more items than the warrant authorized them to." (Compl. ¶ 33.) Second, Plaintiff's requested relief is a temporary restraining order "requiring return of all items Defendants[] seized on July 20, 2021 that were not 'Cell Phones possessed by Gomez and Rodriguez[.]'" (Appl. at 8.)

In her Application, Plaintiff attempts to avoid the application of the Rooker-Feldman doctrine by arguing that she is not seeking to challenge the warrant issued by the state court. Rather, she limits her challenge to Defendants' seizure of items beyond those described in the search warrant ("Cell Phones possessed by Gomez and Rodriguez"). (Appl. at 7.) The Court is not persuaded. Any legal basis to return the property turns on whether it was properly seized with probable cause, i.e., whether it was within the scope of the search warrant. Even if indirectly, Plaintiff is challenging the purview of the search authorized by the warrant. Regardless of how she frames it, Plaintiff's challenge to the scope (and execution) of the search warrant in an ongoing prosecution in state court constitutes a de facto appeal. See Roberts v. Los Angeles City Fire Dep't, 86 F. Supp. 2d 990 (C.D. Cal. 2000), aff'd, 23 Fed. Appx. 267 (9th Cir. 2002) (dismissing complaint challenging a search pursuant to an allegedly invalid warrant as precluded by the Rooker-Feldman doctrine).

//
//

---

[1] Defendants appear to apply the "inextricably intertwined" test without first establishing whether Plaintiff's Application is a de facto appeal. (Opp'n at 7-8.) But "[o]nly when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play." Noel, 341 F.3d at 1158.

### 2. Inextricably Intertwined Claims

When a plaintiff brings a de facto appeal, the <u>Rooker-Feldman</u> doctrine also precludes district court jurisdiction over any issue that is "inextricably intertwined" with the state court's decision. <u>Cooper v. Ramos</u>, 704 F.3d 772, 777 (9th Cir. 2012). A claim is "inextricably intertwined" with a state court decision "if the general claim succeeds only to the extent that the state court wrongly decided the issues before it." <u>Id.</u> at 778 (quoting <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 25 (1987)).

Plaintiff's requested relief is "inextricably intertwined" with state court decisions. Plaintiff seeks to require Defendants to return property seized pursuant to a search warrant, which she argues exceeds the scope of the warrant. (<u>See</u> Appl.) But Plaintiff's claims would only succeed if the Court found that the first and second search warrants issued in this case were improperly drawn or executed. Plaintiff's claim is therefore "inextricably intertwined" with the state court's decisions. <u>Cooper</u>, 704 F.3d at 778; <u>see also</u> <u>Bey v. Geiser</u>, 2017 WL 6940546, at *2 (C.D. Cal. Oct. 5, 2017) (denying TRO request where plaintiff sought to prohibit state officers from executing state court's notice to vacate property).

Because the <u>Rooker-Feldman</u> doctrine applies, the Court lacks jurisdiction to hear Plaintiff's Application. As in <u>Sato v. County of San Bernardino</u>, 2020 WL 6714009 (C.D. Cal. Sept. 25, 2020), rather than seeking this Court's intervention, Plaintiff must challenge any issues related to the warrant (including its scope and application) in state court. <u>Roberts</u>, 86 F. Supp. 2d at 993.

### V.    CONCLUSION

For the reasons above, the Court DENIES Plaintiff's Application.

**IT IS SO ORDERED.**